Henry D. Duarte and Dorothy F. Duarte, Petitioners, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 2046–63. Filed May 19, 1965.

*James A. Ronayne,* for the petitioners.
*Warren S. Shine,* for the respondent.

Pierce, *Judge:* Respondent determined a deficiency in income tax against petitioners in the amount of $5,970.45 for the taxable year 1959.

The issues for decision are:

(1) Whether the principal petitioner's purported transfers to his two children of 50 percent of his stock in a wholly owned business corporation, which he then elected to have taxed as a subchapter S corporation under sections 1371–1377 of the 1954 Code, were bona fide and economically real; or whether the transfers were in form only and lacked economic substance, so as to make all of the taxable income of the corporation attributable to said petitioner.

(2) If said transfers were in substance what they purported to be in form, should an increased portion of the taxable income of the corporation be allocated to said petitioner in order to reflect the value of his services in accordance with section 1375(c) of the 1954 Code?

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts and all exhibits identified therein are incorporated herein by reference.

Henry D. Duarte, Sr., and Dorothy F. Duarte, the petitioners herein, are husband and wife and reside in Englewood Cliffs, N.J. For the calendar year 1959 they filed a joint income tax return with the district director of internal revenue, Manhattan District, New York. Dorothy F. Duarte is a party to this case solely by reason of having joined in the joint return, and therefore Henry D. Duarte, Sr., will hereinafter be referred to as the petitioner.

Petitioner has been the president of Graham Accounting & Statistical Corp. (hereinafter called Graham Corp.) since its incorporation under the laws of New York in January of 1956. From 1940 to 1956 the business had been operated by petitioner as a sole proprietorship; and at the time of incorporation of Graham Corp. all of the 100 shares of capital stock of the corporation were issued to petitioner.

Graham Corp. furnished temporary office help to other businesses in the New York area. It kept a file of available bookkeepers, stenographers, and other office help; and when called upon to do so, would furnish businesses with temporary office help by the hour, day, week, or longer periods of time. It paid the wages of the help it sent out, and charged the businesses an amount to cover wages, taxes, overhead costs, and profit. The advantage to a business that availed itself of the Graham Corp. services, was that it did not need to carry employees for a full year in order to handle busy seasons. Graham Corp. also provided businesses with other services such as the preparation of payroll tax returns and other tax reports.

Petitioner has two children—a son, Henry Duarte, Jr., who was born on June 7, 1942, and was about 15 years of age in the taxable year here involved; and a son, William P. F. Duarte, who was born on December 18, 1949, and was about 8 years of age at that time. On May 11, 1958, petitioner endorsed his stock certificate for 100 shares of Graham Corp. (being all the shares of said corporation) as follows:

For Value Received I hereby sell, assign, and transfer unto H. D. Duarte, Sr. (50 shares), Henry Duarte, Jr. 25 shares) & Wm. P. F. Duarte (25 shares) Shares of the Capital Stock represented by the within Certificate * * *.

Petitioner's stock certificate for the 100 shares was then turned back to the corporation and on May 12, 1958, the corporation issued a certificate for 50 shares to petitioner, a certificate for 25 shares to Henry D. Duarte, Jr., and a certificate for 25 shares to William P. F. Duarte. On the new stock certificates issued to petitioner's children, the names of the owners were designated at "HENRY DUARTE, JR" on one certificate, and as "WILLIAM P. F. DUARTE" on the other certificate. At a subsequent date in 1959 the certificates were amended by inserting on the face of each certificate the additional words "To DOROTHY DUARTE AS CUSTODIAN FOR" before the name theretofore shown on each certificate, and also by adding the words "UNDER THE NEW YORK UNIFORM GIFTS TO MINORS ACT" after the name on each certificate.

The New York Uniform Gifts to Minors Act became effective on July 1, 1959, and it repealed the Gifts of Securities to Minors Law which had theretofore been in effect. The above-mentioned purported transfers of stock by petitioner to his children in May 1958 did not meet the requirements of the Gifts of Securities to Minors Law, because the certificates were not at that time registered in the name of a custodian.[1]

[1] Ch. 35, sec. 265, art. 8–A, N.Y. Laws 1956.

Sec. 265 (a). Securities, if in registered form, shall be registered in the donor's name or in the name of any adult member of the minor's family or in the name of any guardian of the minor, followed by the words "as custodian, for _____ (name of minor), a minor under article eight-a of the personal property law of New York", and the securities shall be delivered to the person in whose name they are thus registered as custodian. * * *

Petitioner filed a gift tax return for the year 1958 reflecting the purported transfer of 25 shares of stock to each of his children; but there was no reportable gift tax liability.

In January 1959 Graham Corp. filed its election in accordance with section 1372(a) of the Internal Revenue Code of 1954 to be taxed as a small business corporation, and the corporation then qualified for tax treatment as what is sometimes called a subchapter S corporation or a tax option corporation. Subsequently, on January 5, 1959, a resolution was passed by the board of directors of Graham Corp. reducing petitioner's salary from the $30,000 he had been receiving annually in 1956, 1957, and 1958, to $15,600. Petitioner actually received for his services $15,200 in 1959, $14,800 in 1960, and $15,600 in 1961.

Petitioner filed on behalf of the corporation a small business corporation return (Form 1120-S) for the calendar year 1959 with the district director of internal revenue, New York, N.Y., and also similar returns for the years 1960 and 1961. The following summary shows the amounts reported on said returns as having been distributed to petitioner's children during each of the years 1959, 1960, and 1961:

| Year | Date of distribution | Amount of dividend distributions | | | Total undistributed taxable income | Total taxable income per 1120-S |
|---|---|---|---|---|---|---|
| | | Petitioner Henry Duarte | Henry, Jr. | William P. F. | | |
| 1959 | Dec. 18, 1959 | $8,000.00 | | | } $1,982.54 | $17,982.54 |
| | Dec. 28, 1959 | | $4,000.00 | $4,000.00 | | |
| 1960 | Dec. 1, 1960 | 8,000.00 | 4,000.00 | 4,000.00 | 5,509.43 | 21,509.43 |
| 1961 | Dec. 31, 1961 | 30,686.92 | [1] 15,343.46 | [1] 15,343.46 | | 61,373.83 |
| | Totals | 46,686.92 | 23,343.46 | 23,343.46 | 7,491.97 | 100,865.80 |

[1] Schedule K of the 1961 return shows, in column 5, dividends of $15,360.38 distributed to each of the two children, of which $16.92 was deemed a "nondividend distribution" per column 10—or a net of $15,343.46 to each child.

The above summary reveals that a total of $23,343.46 was distributed as dividends to petitioner's son Henry during the years 1959, 1960, and 1961; and that a like amount was distributed as dividends to his son William for the same year. In fact, neither the designated custodian of these children, nor the children themselves, received any of these amounts.

As regards the year 1959 here involved, the above summary reveals that on December 28 of that year $4,000 was distributed to each of petitioner's children; but here again, no portion of such amount was received by either of the children. No custodian account for Henry Duarte, Jr., was opened until December 29, 1961; and no account of this type was opened for William P. F. Duarte until January 30, 1962. Although an income tax return for the year 1959 was filed for each of the children, these returns were actually prepared and signed

by petitioner, and petitioner paid all of the reported tax liability out of his personal checking account.

Petitioner during the year 1959 exercised complete dominion and control over the operations of Graham Corp. and the dividends purportedly distributed to his children.

Respondent, in his notice of deficiency herein, determined that "the entire amount of the small business corporation income is distributable to you [petitioner] and none is distributable to your sons, Henry E. [sic] Duarte, Jr. and William P. F. Duarte."

### ULTIMATE FINDING OF FACT

The purported transfers of stock by petitioner to his two minor children had no economic reality; and petitioner was the true economic owner of all of the stock of the Graham Corp. during the taxable year here involved.

### OPINION

Respondent contends that the transfer by petitioner of 50 percent of his stock to his children was not bona fide and lacked economic reality. We agree with respondent.

If there were not legal limitations, it would be easy for a small family business to incorporate, elect to be taxed as a subchapter S corporation, and then divide the stock among members of the family with a resulting division and splitting of the income. But in addition to general legal principles limiting the effectiveness of such a plan when it lacks economic substance, the provisions of the Internal Revenue Code of 1954 also regulate the splitting of income among members of a family. Section 1375 (c) of the Internal Revenue Code of 1954 provides that:

SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS.

(c) TREATMENT OF FAMILY GROUPS.—Any dividend received by a shareholder from an electing small business corporation (including any amount treated as a dividend under section 1373 (b)) may be apportioned or allocated by the Secretary or his delegate between or among shareholders of such corporation who are members of such shareholder's family (as defined in section 704(e)(3)), if he determines that such apportionment or allocation is necessary in order to reflect the value of services rendered to the corporation by such shareholders.

Also Income Tax Regulations, sec. 1.1373–1, provide:

Sec. 1.1373–1 Corporation undistributed taxable income taxed to shareholders.

(a)(2). * * * A donee or purchaser of stock in the corporation is not considered a shareholder unless such stock is acquired in a bona fide transaction

and the donee or purchaser is the real owner of such stock. The circumstances, not only as of the time of the purported transfer but also during the periods preceding and following it, will be taken into consideration in determining the bona fides of the transfer. Transactions between members of a family will be closely scrutinized.

The above provisions make it clear that if a transaction between members of a family is not bona fide, its effectiveness as an income-splitting device will be frustrated.

We have often held in considering various types of transactions that if a transaction is complete in form but lacks reality, it will not be recognized as effective for income tax purposes. See *Gregory* v. *Helvering*, 293 U.S. 465; *Knetsch* v. *United States*, 364 U.S. 361. This has become a major principle of income tax law.

Respondent determined that the stock transfers between petitioner and his children were not bona fide; and the burden of proving that there was substance to the transfers was on the petitioner. See *Roy C. Acuff*, 35 T.C. 162, 172, affd. 296 F. 2d 725 (C.A. 6, 1961). The only witness for the petitioner was the petitioner himself; and the only exhibits received in evidence were the income tax returns of the corporation and of the petitioners, and the stock certificates involved. And after seeing and hearing petitioner testify and after considering and weighing all the evidence, we are convinced that petitioner has not carried his burden of proof.

The mere form of the stock certificates is not sufficient in itself to establish the realism of the transfers. There is no evidence that either the custodian who was named in the certificates as amended, or the children themselves, exercised any influence at all in the operation of the corporation; and to the contrary, the evidence reveals that the petitioner, following the transfers, continued to completely control the policies and operation of the corporation. As we have hereinbefore found as a fact, the children did not receive any of the $4,000 which the corporation reported as having been distributed to each of them in the taxable year involved. No bank account or book account was established for either of the children in said year; and petitioner was unable to satisfactorily explain what happened to this money.

We have heretofore found as an ultimate fact, and we here hold, that the purported transfers of stock by petitioner to his two minor children had no economic reality; and that petitioner was the true economic owner of all the stock of the Graham Corp. during the taxable year involved. We decide this first issue for the respondent.

Since we have held for respondent on the first issue, it is unnecessary for us to consider the alternative second issue.

*Decision will be entered for the respondent.*